Good morning. Good morning. May it please the Court, my name is Matthew Rabinovich, and I represent Esmeralda Tomas-Melchor and her three young children. I would like to reserve three minutes for rebuttal. I would like to focus on two different issues in this case that warrant a remand to the agency, the first one being that the board and immigration judge erred with respect to the lack of nexus, and particularly with respect to the particular social group of women without partners. At a minimum, nexus was established for withholding of removal, which has a lower nexus requirement of a reason rather than the central reason for the harm. Secondly, I would like to focus on the board and immigration judge erring with respect to the persecution issue and whether the harm suffered cumulatively rose to the level of past persecution. Legal findings and mixed findings are subject to de novo review. The board ruled that they agreed with the immigration judge that, assuming the respondents' proposed particular social groups were cognizable, the respondent did not establish a nexus. So Ms. Tomas-Melchor testified that her father had, on numerous occasions, beaten her with a belt and with the reins to a horse. And the immigration judge found that there was insufficient— Let me ask you about timing. She testifies that her father beats her, beats her with horse reins and a belt and so on. Does she testify that he does this after she's in the social group that is to say women without partners, or was the testimony that he did this while she was very young? She was young at the time of the beatings with the belt and horse reins. So that doesn't then correlate with that particular social group. Well, she continued to be—the dynamics of the relationship continued to the extent of abusive relationship, even as an adult, and she continued living in the home. And he'd throw her out of the home occasionally. Yes, exactly. She'd throw her out of the home. But with respect to the physical abuse, I'm not sure that it coincides temporally with that particular social group. Well, it's true that when she was a child, you could say she didn't have a partner, but it's also true that she did not have any male figure or any type of protection, and this is in line with— As a child, she didn't have any male partner or protection. True, she did not. The point, I think, of Judge Fletcher's question is that he was never violent toward her once she was an adult. He threw her out of the house. Correct? Correct. That's correct. And yelling and kicking her out of the house was the extent of the abuse after she became an adult, right? From that point. So what is the connection between her proposed social group and the abuse, even assuming that that abuse rises to the level of persecution? What's the nexus there? Well, the issue had been that the court stated that the gender and lack of protection essentially were unrelated. And in our view, they were related to his treatment of her, whether it be the physical abuse, the verbal abuse that, again, continued into her young adulthood, and the fact that she did not have any sort of protection against him. And that also included no government protection, as the evidence in the hearing showed that the government did not take domestic violence seriously. And even when it had been reported that she had been attacked by her father, the government of the Mexican government did not take any action against him. The second issue is— Is there any evidence that the Mexican government knew of this? Was it the Los Talcos gang or cartel? Cartel, is that the name? Am I pronouncing it correctly? Yes, cartel. And what is—there wasn't any evidence that the Mexican government knew of the cartel's action, is there, or declined to stop them? What is the evidence of any kind of acquiescence by the Mexican government specifically? Well, Judge, arguably the evidence showed that they had allowed this cartel to take control of this town to the extent that, you know, you had cartels burning buses on the side of the road, you had cartels preventing people from— Just generally, cartels generally. Yes, generally. The Board of Immigration Appeals, I believe, deemed that they're basically unsupported. Essentially, the contention was that the police do whatever they—let the cartels do whatever they want. That's a general social criticism, perhaps, of a Mexican society. But was there any specificity in terms of acquiescence of the government here on this? Well, there was not a specific complaint concerning these issues.  So there clearly is no evidence that the Mexican government acquiesced in this situation? Well, not to the specific harm that we're talking about, but in general they had surrendered the town to these criminals, and it would be futile to report these incidents based upon the way the government and the police handled things or just allowed the cartel to basically run rampant. The other issue is with respect to persecution, and just to briefly touch on that, the immigration judge focused upon the lack of serious injuries or need for medical care, which did not follow the standard, which is the infliction of suffering or harm. So the focus was on injuries, and the immigration judge and the board, which affirmed the immigration judge, did find that there was physical harm, there was physical abuse, the beatings with belt and horse reins, but focused so much on the lack of injuries. And so that was an error, and the—arguably, persecution was proven. So with that, I guess I would rest and reserve arguments. You have a couple of minutes. Thank you. Thanks. Good morning. May it please the Court, Shelley Clemons on behalf of the Attorney General of the United States. Your Honor, there's two main issues that were raised in the briefing in this case that the government believes are dispositive of this petition for you and why it should be denied. First, there was substantial evidence to support the agency's decision that Petitioner failed to establish a nexus between the harm that she suffered and fears and any protected ground. And second, Petitioner failed to establish that there was—that it was more likely than not that she would be tortured if she was returned to Mexico or that the government of Mexico would—or local officials would acquiesce or consent to any such torture. Beginning with the standard of view in this case, since it's been raised, in this case, the government believes and believes the case law supports that the proper standard of view in this case is a deferential one, not of substantial evidence. This—and the government would note that in their opening brief, Petitioner actually argued for the substantial evidence review, concluding their argument on nexus that substantial evidence compelled a different result. It has been—while there's definitely some cases that say differently in this Court, it has been the longstanding holding of this Court that substantial evidence is the proper standard of view when determining nexus. Whether an event occurred and what a persecutor's motive for that event is a factual question. And I would note this Court that as recently as 2023 in the published decision of Rodriguez-Zuniga, this Court held that it was substantial evidence was the proper standard of review. But we— It's not purely a factual question, is it? Because there's a legal question, legal standard embedded in there. So why isn't this a mixed question of law, in fact, to which de novo review applies? First of all, because what you're primarily— the linchpin of the nexus argument is what the persecutor's motive was, is the but for. Would this have occurred but for the persecutor's motive, but for her membership in this case as part of the social group? So the legal component of it kind of takes a backseat to what the motive is, and that has been consistently held by this Court, by the Board, and in which the Board's cited in their decision to be a factual one. It should be reviewed for substantial evidence. And I would note that the—I think it's Guerrilla-Glasperilla case, which was cited by a petitioner in a reply brief for the argument that this is a mixed question. I would note, first of all, that that was not—the issue in that case was not decided on the standard of review. In fact, it was an issue of whether or not there was jurisdiction for the Court to hear something that they would possibly be deemed to be a question of law. That is not the case here. We're talking about a question of fact, determining what the gang's motive was, what the father's motive was. I would also note— So the government's argument, then, is that Wilkinson is limited to just the jurisdictional context? I'm not talking about Wilkinson. I'm talking about Guerrilla-Glasperilla. Wilkinson is very recent, and it says that mixed questions of law, in fact, even if it's primarily factual, it's still a question of law. Right? My understanding, in determining whether or not there's a particular hardship— Not verbatim, but I'm almost quoting from Wilkinson. It has that statement in there. But I would note in Guerrilla-Glasperilla— At least for purposes of 1252a to d. Well, first of all, 1252 does not speak to a de novo review. It speaks primarily to a substantial evidence review. Furthermore, in Guerrilla-Glasperilla, the Court noted, and that's the Supreme Court, specifically noted that while it was not determining the standard of review in this case, what the standard of review would be would be shifting depending on what was the particular issue at hand. So in this case, since we're primarily focusing on the motive, which this Court has consistently held is factual, that in this case it shifts to being a primarily factual decision, and therefore we should review this under substantial evidence. However, the government would note that in the particular facts, evidence presented in this case, the Court need not decide the issue because petitioner failed to meet her burden regardless. Turning to her particular social group— On that point, even if we didn't even need to reach the issue of the standing, there was not any evidence of past persecution, was there, essentially? And that even if you apply the higher standard, impose a higher standard on the prevailing party and make it a de novo standard, that it would—it still survives from your point of view, correct? That is correct, Your Honor. Telling someone to get off the bus and walk is not persecution. And I would note that there was absolutely no evidence of how long Mr. Mas-Malcor and the other passenger in the bus were required to walk. It was just they were told to walk back. The fact that they assaulted her husband, they took him away and beat him somewhere else. They weren't beating him to get her to do something or to inflict harm upon her. They showed absolutely no evidence of even wanting to have anything to do with her. And in regards to her particular social group relating to her relationship with her father, again, there is no evidence to show that the fact that she is currently a woman without a partner is the reason why her father is such a terrible person. As the court noted, any physical abuse that occurred as a child while abhorrent is when she was a child and technically not part of this particular social group. And as an adult, the extent of the abuse, if you could call it that, is shouting at her and, quote, running her out of the house. That's not sufficient to show persecution. Even applying the de novo standard. Even applying the de novo standard, Your Honor. Furthermore, there's no nexus in this case with the actions of her father. As a child, he also beat her brother, clearly who would be someone without a partner. But yet she claims women without partners. He also beat her mother. Clearly she had a partner, that being her husband. But as an adult female, in this particular instance, she does not meet her burden to demonstrate that it was on account of. The fact that she might be more vulnerable because she's a woman without a partner doesn't mean that that is the reason why. And, in fact, her own testimony demonstrates a contrary reason why, which is basically her father was an abusive individual who would drink and get angry and beat them for no reason. Turning to the acquiescence argument, first of all, the government argued that there was no way to surpass torture. If you don't have past persecution, clearly you have no torture in this particular instance. Second, there's no evidence that the local officials or the government of Mexico would consent or acquiesce. There's certainly no testimony that they were involved in any of the past abuse, if you could call it that. Certainly no evidence of knowledge or awareness other than one police report made, we don't know when, I'm assuming it was when she was a child. It was unclear in the record. And no evidence that they were aware of and unwilling or unable to control the cartels in this matter. If the court has no further questions, the government would submit on the briefs. Thank you, counsel. Thank you.  Briefly, we do feel that de novo review would be the appropriate level of scrutiny in this matter. We are talking about legal findings and mixed findings of law and fact. And we're talking about what constitutes persecution and whether there was evidence supporting a nexus for the particular social group and focusing on several of the particular social groups, including women without partners. Ms. Tomas Melcher's husband was beaten for hours. It wasn't just a minor slap or one punch. He was beaten for hours. This was traumatic for her and her family. And merely because her brother was also attacked at one point by her father does not mean that there was not a reason for the persecution based upon her gender and lack of defense because she didn't have someone to protect her. Thank you. All right. Thank you very much, counsel, for your arguments. The matter is submitted.
judges: FLETCHER, NGUYEN, Bennett